THE FRANKLIN COAL AND COKE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(EMITT TROTT, Defendant in Error.)

*Opinion filed June 16, 1926.*

1. WORKMEN'S COMPENSATION—*when injury arising out of altercation is compensable.*   An employee in a mine who was shot by a fellow-employee as the result of a quarrel between them in regard to the division of work is entitled to compensation where he was not the aggressor at the time of the shooting; and the fact that the employee committing the assault had drawn his pay and quit his job a few hours prior to the shooting does not affect the question whether the injury arose out of the employment.

2. SAME—*when an injury arises out of employment.*   An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the condition under which the work is required to be performed and the resulting injury.

WRIT OF ERROR to the Circuit Court of Franklin county; the Hon. JOHN C. EAGLETON, Judge, presiding.

HENRY J. & CHARLES AARON, and WILLIAMS, LEWIS & COFFEY, (FRANKLIN RABER, of counsel,) for plaintiff in error.

A. W. KERR, and A. C. LEWIS, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The Industrial Commission reviewed, sustained and ordered to stand as its decision an award of the arbitrator in favor of Emitt Trott, defendant in error, for accidental injuries received by him, and against the Franklin Coal and Coke Company, and made its order and finding that the defendant in error was entitled to receive the sum of $15 per week for a period of 30 weeks for temporary total incapacity for work, $15 per week for a period of 175 weeks, as provided in paragraph (*e*) of section 8 of the Compensation act, for total, permanent and complete loss of the left leg, and the further sum of $664 for first aid, medical, surgical and hospital services, as provided in paragraph (*a*) of said section. On review by *certiorari* proceedings the circuit court of Franklin county quashed the writ of *certiorari* and confirmed the award of the commission. A writ of error was allowed by this court on petition of the coal company for a review of the record.

On October 3, 1922, defendant in error, an employee of the plaintiff in error, was shot and injured while taking a bath in its bath-house just after he had finished his day's work. He was shot by Athern Beam, another employee of plaintiff in error, who had on the morning of that day terminated his employment with the company and collected the amount due him for past work to that time. Beam and Trott were both former residents of Arkansas and had been good friends prior to the shooting and both had been employed as drivers in the mine of said company prior to the shooting. As evidence of their former close friendship it is shown in the record that Beam was surety on Trott's note in September, 1922, in order that Trott might receive money to bring his wife from Arkansas to Royalton, near which place the mine was located. Beam had preceded Trott to Royalton and had been working in the said mine some time before Trott came and was employed there, and

both of them were employed there as drivers in the mine up until about nine o'clock of said day, when Beam called at the paymaster's office of the company and asked for his time, stating that he was quitting. He drew his pay and left the company's office. About three o'clock of the same day Trott came out of the mine and went to the bath-house of the company to take a bath. When he entered the bath-house he saw Beam, and after he had undressed himself he went into the bath-room and got under the spray. Beam then walked under the spray near Trott and stood looking at him, with his clothes on. Trott said to him, "Well, you ain't gone yet." Beam replied, "No." Trott then told him to get back or he would get wet. Beam immediately turned and walked out of the bath-room but returned shortly. Trott asked him to wait a minute and he would walk home with him. Beam replied that he was going out, and when he got to the door of the bath-room he pulled his gun and began shooting at Trott. He fired six shots, striking Trott in the left side and left leg. Beam then walked out and remarked to a bystander, "How do you like that?" Beam had been drinking, and took a drink out of his bottle in the bath-room just prior to the shooting. Trott was taken to Zeigler Hospital in a truck.

It appears that while Trott was working at the mine he did not have a regular run as a driver but was known as a "roustabout," or a driver assigned to help the regular drivers according to their wants. If a driver was behind in his turn Trott would be sent to help that driver so that each man would have delivered to him the same number of cars to load. It is shown that it was a custom in that mine of several years' standing that the roustabout driver received his directions from the regular driver as to the places he should go to get the cars of coal he was pulling. About six days before the accident Trott was assigned to help Beam on his run, Beam being a regular driver. Some of the rooms on that run were far away from the point to

which the coal therein was to be hauled and the rooms were difficult to get into and out of. The evidence shows that Beam assigned these difficult runs to Trott and that Trott protested, and that the two quarreled with each other and became very angry, both using ugly and insulting words. One witness testified that he heard Beam say that if he, Trott, did not want to make the runs where he told him, "to h—l with him." Another witness heard Trott say something about his mule falling down every time he went into a certain room and that he could hardly get out of there. The evidence shows that the quarrel became very heated; that they swore at each other and were talking fight, but there was no actual fighting by them, the only attempted violence being at the time and as above related. Trott testified positively that there was never any other trouble between them. One or two witnesses testified while Trott was on the way to the hospital he remarked to those who accompanied him that he would not shoot a man over another man's wife. He denies making this statement, and there is nothing else in the record tending to show that there was any cause of quarrel between these two men except the fact that Trott had accused Beam of not giving him a fair deal in his designations of trips or hauls that Trott should make in Beam's entry, where he worked. In fact, it clearly appears from the record that this was the sole cause of their quarrel and ill-feeling toward each other, and that Beam met and passed Trott several times between the time of that quarrel and the day of the shooting without speaking to him.

The sole question presented for decision in this case is whether or not the injury upon which the award was based arose out of Trott's employment. It is the contention of plaintiff in error that the injury did not arise out of the employment; that there is no causal connection established between the shooting, resulting in the injury, and Trott's employment; that Beam was not an employee of the company when the shooting occurred; that his presence in the

bath-house was not in connection with any employment nor in pursuance of any duty but was that of a mere trespasser; and that it does not appear that the shooting occurred as the result of any controversy in the bath-house or that it was the outgrowth of any act of Trott's in connection with the performance of any duty of his employment.

We think the evidence shows clearly that the injury in question arose out of Trott's employment. It was the direct and final result of the quarrel that the two employees had over the question of whether or not Beam was treating Trott fairly in designating the hauls or trips that Trott should make for him and on his run as a driver. This appears from the last words that were passed between them as Beam stood, with his coat and all his clothes on, under the shower while looking at Trott. When Trott told him to stand back or he would get his clothes wet, Beam replied that he could not get along with him "and he drawed his time," meaning thereby that he had quit the coal company because of his quarrel with Trott. Trott simply replied, "Not as long as you are trying to hand me a package like you are." Beam then said, "I will give you a little worse," and without any further explanation or further words he walked to the door, turned, and shot at Trott six times. In this final meeting when he was shot Trott was not the aggressor and had not done anything that would provoke a quarrel out of any reasonable man on that day and time. The whole evidence tends to show that Beam was still harboring malice against Trott that was engendered by reason of the quarrel over the question of the division of work a few days previous, and that he had quit the employment and received his final pay with the expectation and intention of taking his revenge on Trott, so that he could make his escape without having any further occasion to delay his flight by collecting what was due him. The fact that Beam had just a few hours previous to the shooting severed his connection with the company does not in any way, so far as

we can see, affect the question as to whether or not the injury arose out of the employment and by reason of it.

This court held in *Pekin Cooperage Co.* v. *Industrial Com.* 285 Ill. 31, that where one is injured by another employee because of a dispute about the manner of doing the work he was employed to do, the accident to the injured employee grows out of the employment and is compensable. In *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Com.* 288 Ill. 126, we held that where an employee was shot and killed by another employee with whom he had had a quarrel and a fight because the deceased, as a part of his duties, had reported the other's absence from work, the injury and death are an incident to and arise out of the employment, and that the deceased's wife and children were entitled to compensation under the Workmen's Compensation act. We said in that case that an injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the condition under which the work is required to be performed and the resulting injury. Similar holdings have been made in the cases of *Swift & Co.* v. *Industrial Com.* 287 Ill. 564, and *Taylor Coal Co.* v. *Industrial Com.* 301 id. 548, in which cases injuries resulted from quarrels arising in the course of and out of the employment and resulting injuries were sustained by one of the employees. It is also a prerequisite in all the cases that the injured employee who seeks compensation, or whose representatives or wife and children seek compensation by reason of his death, shall not have been the aggressor in the fight or conflict in which he was injured, so that he may be said to be at fault or the cause of his injury at the time of the conflict. The case now in hand comes clearly within the rulings laid down in those cases and the court did not err in confirming the award.

The judgment of the court is affirmed.

*Judgment affirmed.*