(No. 20846.—

THE TRIANGLE AUTO PAINTING AND TRIMMING COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(FRANK KOLNIK, Defendant in Error.)

*Opinion filed December 17, 1931.*

MOLONEY & POSTELNEK, (MATTHEW J. O'BRIEN, of counsel,) for plaintiff in error.

J. W. KOUCKY, for defendant in error.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Defendant in error, Frank Kolnik, filed an application for compensation against plaintiff in error for injuries alleged to have occurred while in the latter's employ. The cause was referred to the arbitrator, who recommended an award. The Industrial Commission · confirmed the award on review and the circuit court of Cook county in turn confirmed the award of the commission. The cause is here on writ of error granted by this court.

The undisputed facts show that Kolnik's injury was received in a fight with a fellow-workman; that Kolnik was, and had been for more than two years prior to January 30, 1930, the date of the injury, employed by plaintiff in error. For three months prior to that date he had been working as a polisher and sprayer, using an instrument known as a "spray gun" for painting automobiles. His previous employment had been that of polisher. He was about thirty-eight years of age and was partially deaf by reason of illness some twenty years prior. About one year prior to the date of this injury Kolnik and one Duncan, from whom he received the injury here involved, had engaged in another fight over a polishing job. Concerning the facts of Kolnik's injury on January 30, 1930, the evidence is in dispute. He testified ·that John Klee, president of plaintiff in error, had given to him the particular spray gun over which the dispute arose and told him to keep it in order and not to let anyone else use it, and that if he spoiled it

he would have to have it repaired. Klee testified that he did not tell Kolnik not to give it to anyone else. It appears from the evidence that on the day of the injury Klee directed Duncan to use the particular gun in spraying cars. At this time the gun was hanging on the wall back of a car which Kolnik was polishing. Duncan, on account of his difficulty with Kolnik, refused to take the gun unless Klee instructed Kolnik to let him have it. Klee testified that he went to Kolnik and stood on his right side and told him to let Duncan have the gun, but that he was not sure that Kolnik heard him because of his deafness in that ear. Kolnik did not state whether he heard Klee say to let Duncan take the gun. He did not deny that Klee came over to him and talked to him. As Duncan took the spray gun from the wall Kolnik approached and told him to let it alone. Duncan did not replace the gun and the two men engaged in an encounter, resulting in Kolnik's injury. Kolnik testified that he put his hand against Duncan's breast but did not strike him hard. Duncan, Klee and others testified that Kolnik sprang upon Duncan and caught him at the throat, striking him on the breast. All the testimony agrees that Duncan hit Kolnik over the head with the gun, resulting in the injury for which compensation is sought.

The only issue involved in the case is whether the injury upon which the award is based arose out of Kolnik's employment. It is admitted that it occurred in the course of the employment. It is the argument of plaintiff in error that where an injury arises out of a conflict or altercation between two employees in which the injured employee was the aggressor he is not entitled to compensation. Counsel on both sides cite the opinions of this court in this class of cases. Our decisions are not entirely in harmony in the deductions permissible therefrom. In *Pekin Cooperage Co.* v. *Industrial Com.* 285 Ill. 31, the applicant, Rasor, received an injury growing out of a fight with a fellow-employee, Miller. It appears that both Rasor and Miller were engaged

in culling barrel staves to be used in making barrels. They were working with different co-employees known as "barrel raisers," who assembled the barrels. Miller took some staves from Rasor's rack and put them in his own, and this brought about a fight in which Miller was the aggressor and Rasor did no more than defend himself. This court there reviewed the cases dealing with injuries of like character and pointed out that all cases concur in the rule that the accident, to be within the Compensation act, must have had its origin in some risk of the employment; that in order that it arise out of the employment it is not necessary that the injury be one that ought to have been foreseen or expected, but it must be one which after the event can be seen to have had its origin in the nature of the employment. This court there said: "Infirmity of temper, or worse, may be expected, and occasionally blows and fighting. Where the disagreement arises out of the employer's work in which two men are engaged, and as a result of it one injures the other, it may be inferred that the injury arose out of the employment. * * * The dispute was concerning the employer's work in which the men were both engaged, and there is evidence tending to show that the claimant was not responsible for the assault." The award was sustained.

In *Swift & Co.* v. *Industrial Com.* 287 Ill. 564, the injury to the applicant was received in a fight with another employee concerning a leaking water pipe. The main question there being whether the accident arose out of the employment the cases were again reviewed, and it was held that the quarrel having arisen out of a discussion over the business of the employer and not over a matter personal to either of the contestants the injury could be said to arise out of the employment. It appears that considerable discussion was had in the briefs as to who was the aggressor in the fight in which the applicant, Blum, was injured. This court there said: "While such question might have some bearing on whether the dispute arose out of and in the

course of the employment or was purely a personal matter between the parties, we do not think it is necessarily decisive. * * * We think there is evidence in the record that justified the Industrial Board in finding that the altercation grew out of matters connected with Blum's work, and that therefore the accident arose out of and in the course of his employment, and that the altercation was not purely a personal one entirely outside the scope of such employment." The award was sustained.

In *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Com.* 288 Ill. 126, a locomotive boiler-washer was killed by a fellow-employee as the result of an altercation arising over the fact that the deceased had informed their employer that his assailant, who was his helper, had quit work before it was time for him to leave. It appears that in the first altercation over this matter no one was injured, and that the assailant, Hunt, departed and later returned to the place where deceased was working with another helper and shot and killed him. It was held that as deceased required the assistance of a helper in his work and it was therefore necessary to inform his employer of Hunt's departure there was causal connection between the conditions under which the deceased was required to perform his work and the injury, and the injury therefore arose out of the employment. The assailant of the deceased was the aggressor, but the question of what, if any, influence that fact had in determining whether the injury arose out of the employment was not raised and not discussed.

In *Marion County Coal Co.* v. *Industrial Com.* 292 Ill. 463, an employee of the coal company killed another in a fight which grew out of a disagreement over the work of their employer in which the two employees had on the previous day been engaged. Deceased charged the other employee, Orrison, with unfairness on the previous day in the distribution of cars used by the miners in mining coal. Deceased became abusive, and Orrison picked up a club and

told deceased if he did not desist he would hit him on the head. Deceased sprang at him as if to seize him and Orrison struck him on the head and killed him. It was there held by this court that the accident did not arise out of the employment; that the argument related to the employment of the day before but had no relation to the then present work of the parties; that deceased was not performing any duty or protecting property of his employer; that the interest of the employer was not being aided, and that the quarrel and consequent injury had no reasonable connection with any work then being done for plaintiff in error. After reviewing the cases hereinbefore discussed in which it was held that the injury arose out of the employment because there was causal connection between the injury and the conditions under which the employee was required to perform his work, this court stated: "None of these cases, in which the injured party was not the aggressor but was injured in the course of his employment, would justify upholding the award in this case, in which the quarrel was about a past event and in which Muzzarelli [the deceased] was the aggressor."

In *Taylor Coal Co.* v. *Industrial Com.* 301 Ill. 548, the claimant was shot in the arm by a fellow-employee in an altercation between them. The shooting occurred during the noon hour, when neither was employed, and arose over a penalty which had been imposed by the applicant upon the other employee, Sweet, some three weeks before. The applicant, Padgett, struck Sweet and then turned and ran toward the office of the coal company and Sweet shot him through the arm. It was held that the dispute arose out of and in the course of the employment. The dispute was not over work then being done by the employees but over a matter of their employment occurring three weeks before. Neither employee at the time of the altercation was actually engaged in the employer's work but both were going to the place where they usually ate their lunch. The effect of

the fact that Padgett, the injured employee, was the aggressor, was not raised or discussed.

The last case coming to this court in which an injury of this character was involved is *Franklin Coal Co.* v. *Industrial Com.* 322 Ill. 23. In that case the injured employee, Trott, was shot by one Beam, who until just a few moments before the shooting had been a fellow-employee of Trott. It appears that six days before they had had some altercation over the method in which work had been assigned by Beam to Trott. The quarrel that then took place between them became very heated but no actual fighting took place. On the day of the injury Trott was under the shower in the bath-house. Beam came in and told him that he was leaving the employment of the coal company because he could not get along with him, Trott. Trott replied by referring to Beam's treatment of him in assigning work to him, and Beam said, "I will give you something a little worse," and walked to the door, turned, and shot six times at Trott, injuring him in the left side and leg. It was held that there was causal connection between the condition under which Trott's work was being performed and the injury and that the injury received by Trott arose out of the employment. It was not in that case contended that the injured employee was the aggressor but it is said in the opinion: "It is also a prerequisite in all the cases that the injured employee who seeks compensation * * * shall not have been the aggressor in the fight or conflict in which he was injured so that he may be said to be at fault or the cause of his injury at the time of the conflict." As there was no claim that Trott was an aggressor it is argued by counsel for defendant in error here that this statement is dictum.

The decisions of this court and others agree that it is essential that the injury complained of arise out of as well as in the course of the employment. In this case the evidence satisfactorily establishes that the claimant, Kolnik,

defendant in error, was the aggressor in the fight. It is also clear that the fight arose over a matter of the employment of Kolnik and Duncan at a time when they were employed in plaintiff in error's business, and the question is here directly presented whether the fact that the injured employee was the aggressor in the fight renders an injury received by him one not arising out of the employment, even where such injury is received in a fight over the method of doing the employer's work in which the participants of the fight were then engaged. If such fact does not influence the determination of the question whether the injury arose out of the employment the award in this case should be sustained.

Though expressions concerning such a state of facts appear in the opinions, the question has been discussed by the court only in *Swift & Co.* v. *Industrial Com. supra,* where it is stated that such fact might have some influence on the question whether the dispute arose out of the employment, but it was not in that case deemed to be necessarily decisive. The question as to who was the aggressor there appears to have been disputed and an award had been made. In *Pekin Cooperage Co.* v. *Industrial Com. supra,* it was evident that the injured employee was not the aggressor. This was likewise true in *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Com. supra,* and *Franklin Coal Co.* v. *Industrial Com. supra.* In the *Pekin Cooperage Co. case* attention is called to the fact, as shown by the record, that the injured employee was not the aggressor. In *Marion County Coal Co.* v. *Industrial Com. supra,* it was held that the *Pekin Cooperage Co.,* the *Swift & Co.* and the *Chicago, Rock Island and Pacific Railway Co. cases* did not apply to the case there under consideration, for the reasons, first, that the quarrel was about a past event in the employment, and second, that the injured employee was the aggressor. In *Taylor Coal Co.* v. *Industrial Com. supra,* the injured employee appears to have been the

aggressor but the question of the effect of that fact is not discussed in the opinion. While in the *Franklin Coal Co. case* the injured employee was clearly not the aggressor, it is stated as a prerequisite to compensation that the injured person shall not be the aggressor. While this may be said to be dictum since the issue was not involved, it, with the *Marion County Coal Co. case,* may likewise be said to present the view of this court on that question. As hereinbefore stated, the issue involved is whether the injury arises out of the employment. It does so arise when it is apparent to the rational mind, upon consideration of all the circumstances, that a causal connection exists between the condition under which the work is required to be performed and the resulting injury. Applying this test, nothing is shown concerning the condition under which Kolnik was required to perform his duties which may be said to have led to the injury in this case but his injury was traceable directly to his own actions as aggressor in the fight. It can scarcely be said that a causal connection exists between an injury and the conditions of the employment under such circumstances, since the conditions under which Kolnik was required to work were neither the proximate nor a contributing cause of the injury, which arose out of an assault in which he was the aggressor and was an injury which he brought upon himself. As was said in *Pekin Cooperage Co.* v. *Industrial Com. supra,* it may ordinarily be inferred that an injury received in a disagreement over the employer's work in which the employees are then engaged arises out of the employment, but in no case has it been held that it makes no difference who is the aggressor in the fight. In this case it is clear that Kolnik was the aggressor and received the injury in a fight which he started.

We are able to find but few cases in which this matter has been directly passed upon. In *Shaw* v. *Wigan Coal and Iron Co.* 3 B. W. C. Cas. 81, one workman deliberately assaulted another, and the latter in trying to avoid

falling over a rope in his effort to escape threw up his hand, in which he carried a hammer, and struck and injured the assailant. Compensation was denied the assailant. In *Lark* v. *Hancock Mutual Life Ins. Co.* 90 Conn. 303, 97 Atl. 320, it was held that an injury arises out of the employment when it occurs in the course of the employment and is a natural and necessary incident or consequence of it though not foreseen or expected, and that such an injury may arise either directly from the employment or as an incident to it or to the conditions and exposure surrounding it. This is the rule adopted in this State. *Central Illinois Service Co.* v. *Industrial Com.* 291 Ill. 256.

Injuries compensable are those arising out of the conditions under which the employee is required to work and may properly include injuries arising out of a fight in which the injured employee was not the aggressor, when the fight was about the employer's work in which the employees were then engaged, but it is not within the intent of the act that an employee be protected against the consequences of a fight in which he was the aggressor though the fight be over matters of his employer's work in which such employees are then engaged. The risk of injury in such a case can not be said to be incidental to the employment but rather the result of such employee's own rashness.

While it is the purpose of this court to give a liberal construction to the Workmen's Compensation act, to the end that the employee may receive its full benefit, yet we are of the opinion that it would be going beyond the letter and spirit of the act to hold that an injury received by a deliberate aggressor in an assault either arises directly out of the employment or is an incident thereto. We are of the opinion, therefore, that defendant in error is not entitled to compensation and that the circuit court erred in so holding. The judgment of that court is reversed and the award set aside.

*Judgment reversed and award set aside.*