(No. 29358.— )

WILLIAM A. RILEY, Defendant in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(THE FRED A. SNOW COM-
PANY, Plaintiff in Error.)

*Opinion filed May 21, 1946.*

THOMPSON, C.J., and WILSON, J., dissenting.

HENRY L. KANE, (FAY WARREN JOHNSON, of coun-
sel,) both of Chicago, for plaintiff in error.

DANIEL H. LEWIS, and ALLAN S. GOULD, (JACK L.
SACHS, of counsel,) all of Chicago, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Defendant in error, William A. Riley, filed an applica-
tion for adjustment of claim under the Workmen's Com-
pensation Act, alleging certain injuries as arising out of
and in the course of his employment with plaintiff in
error company. The injury complained of was that he
had been shot by another employee of plaintiff in error.

The matter was referred to an arbitrator who awarded
compensation. On review before the Industrial Commis-
sion the arbitrator's decision was set aside with the finding
that Riley did not sustain accidental injuries arising out

of and in the course of his employment and so was not entitled to compensation. On *certiorari* the circuit court of Cook county reversed the finding of the Industrial Commission and entered an order embodying the finding of the arbitrator and giving judgment for costs of the record of proceedings before the commission.

Riley was what was known as a "shift superintendent" in plaintiff in error's plant. This company was, on March 30, 1943, engaged in the treatment of metals. Because of war-time regulations, each shift had its own guard, placed there by the Federal government, and also its separate superintendent. Riley's duty was to check the time of employees and the time consumed in each operation in the treatment of metals. He had the right to discharge employees who failed or refused to do their work but no power to hire. The power to evict discharged or troublesome employees had been delegated to the auxiliary police who acted as guards. It is clear that the superintendent of shifts did not have authority to use a gun in the eviction of an employee but was expected to summon one of the guards to perform such task.

On the evening of the injury, Riley, because of the temporary absence of the guard from the grounds, attempted to evict one Jack Cann, whom he had just previously discharged. Riley testified that it was his business to take the guard's place in the absence of the latter. This, however, is denied by the plant owner and no further evidence appears on the subject.

On the evening of March 30, Riley observed that Cann had come to work despite his order to the contrary. After Cann had worked about four hours and came to punch the time clock for lunch, which clock was located just outside Riley's office, Riley approached him and asked why he was working, to which Cann replied that Riley was not his boss and that he would take no orders from him. Riley testified that at this time Cann struck him in the

face. The testimony of two other witnesses in the immediate vicinity, however, is to the effect that they saw no blows struck although they heard these parties talking. Riley told Cann he was discharged and to leave the plant and to come back for his check in the morning.

There is some dispute as to whether Riley suspected trouble and had sent out to have the guard returned before he, Riley, entered the encounter in which he was shot. Riley testified that when Cann had not left the premises as he had told him to do, he, Riley, strapped on a gun belonging to the day guard and went into the plant to evict Cann in the absence of the guard. Cann had gone to the office of one Travis, his immediate foreman, and Riley testified that he walked to the steps leading to the platform on which Travis's office was located, and called out to Cann saying, "I told you you were through here and to get out of here," and that thereupon Cann turned around exclaiming, "So I'm done," and immediately shot Riley twice. Other witnesses to the shooting testified that Riley approached the platform with a gun drawn and leveled and that Cann, turning around and seeing it, stated, "So you've got a gun," and drew his gun and shot Riley twice as he came up to the steps to the platform. The nature and extent of Riley's injuries are not contested.

The principal question in the case is whether the injury Riley received was one arising out of and in the course of his employment. It is not sufficient that the injury occur in the course of the employment, but it is necessary also that it arise out of the employment. (*Vincennes Bridge Co.* v. *Industrial Com.* 351 Ill. 444; *Dietzen Co.* v. *Industrial Board,* 279 Ill. 11.) Riley's counsel say that the evidence showed that, in the absence of the guard, it was his duty to evict discharged employees and he had a right to carry firearms in order to effectively do so. They cite *Combes* v. *Industrial Com.* 352 Ill. 399, *Ohio Building*

*Safety Vault Co.* v. *Industrial Board,* 277 Ill. 96, and other cases, in support of his claim that he was properly within the scope of his employment at the time. of the injury. It appears clearly, however, that Riley's duty as "shift superintendent" was specifically to supervise the treatment of castings and to keep check on the time of the men on his shift. Generally, he was responsible for the preservation of property and order within the plant and for this purpose could call upon the guards in case of trouble. Some of the witnesses testified that in cases of trouble during the guard's absence they would look to the superintendent to maintain order. Snow, the owner of the plant, denied that a "shift superintendent" had or was expected to assume any of the guard's duties, although it would be logical to assume that the responsibility would fall on the "shift superintendent" if an emergency arose during the guard's absence. The facts in the record before us do not show that any emergency existed which threatened to disrupt the plant or destroy any property at the time Riley took his gun and went to evict Cann.

It is argued by defendant in error's counsel that since Cann did not immediately prepare to go home, it was the duty of Riley to evict him, by force if necessary. Cann was found at the office of his immediate foreman. It does not appear that Riley had informed this foreman of Cann's discharge. We are of the opinion that Riley, in assuming the duties of a guard under such circumstances, was acting as a mere volunteer outside the scope of his employment by undertaking to do that which he was not bound to do, and which he had not been in the habit of doing with his employer's knowledge. The evidence does not justify the conclusion that there was any peril requiring Riley to act as in a case of emergency. His act in accosting Cann in the manner shown by the evidence did not arise out of his employment. (*Kensington Steel Corp.*

v. *Industrial Com.* 385 Ill. 504; *Mepham & Co.* v. *Industrial Com.* 289 Ill. 484.) His injuries were the result of an altercation with a fellow employee in which he apparently was the aggressor. The evidence indicates that he approached Cann with a drawn and leveled gun. His injury received as a result of deliberate aggression did not arise out of his employment nor was it incident thereto. By approaching Cann with a drawn gun Riley stepped out of the scope of his employment and accepted a danger that was in nowise incident to such employment. *Triangle Auto Painting and Trimming Co.* v. *Industrial Com.* 346 Ill. 609; *Franklin County Coal and Coke Co.* v. *Industrial Com.* 322 Ill. 23.

We are of the opinion that the circuit court erred in holding that Riley is entitled to compensation. The judgment of that court is reversed and the award set aside.

*Judgment reversed; award set aside.*

THOMPSON, C.J., and WILSON, dissenting.