(No. 30518.—

CONTAINER CORPORATION OF AMERICA, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(WILMA SILAS, Defendant in Error.)

*Opinion filed September 24, 1948.*

CLARENCE S. PIGGOTT, of Chicago, for plaintiff in error.

Lester B. Marshall, and Jacob Baskin, both of Chicago, for defendant in error.

Mr. Justice Daily delivered the opinion of the court:

Defendant in error, Wilma Silas, filed application for adjustment of claim under the Workmen's Compensation Act against the Container Corporation of America, a corporation, plaintiff in error, seeking compensation for the death of her husband, Willie Silas, deceased, which it was alleged arose out of and in the course of his employment with plaintiff in error. The matter was referred to an arbitrator, who awarded compensation. On review before the Industrial Commission, at which no additional evidence was heard, the award of the arbitrator was sustained. On *certiorari*, the circuit court of Cook County affirmed the finding of the Industrial Commission. The Container Corporation now seeks to review the finding of the circuit court, contending that the death of Willie Silas did not arise out of or in the course of his employment.

The facts show that Willie Silas was working for the Container Corporation on the day that the injuries were sustained which resulted in his death. A roll of paper, which was threaded around the rolls of a large drying machine, broke. A fellow employee, Jim Lee Petty, and a foreman, Arthur Jackson, went to the top of the machine to start threading the broken paper through the rollers. Willie Silas was working beneath them. Petty, who had been working at that job only about three days, dropped the sheet and it fell on Willie Silas, who was about two and one-half feet beneath him. Silas yelled, "No G— D— body is carrying that sheet up there." Petty replied, "We all got to learn." Nothing more was said at that time.

Some thirty minutes later, after completing the job of winding the paper through the machine, Petty went over to a place some distance from the drying machine where the earlier incident occurred, and remained there to cool off.

Silas approached Petty there, and in an abusive manner said he was going to cut his throat. When Silas said that, Petty struck him with his right fist and Silas fell down. Silas then got up and faced him again, and Petty again struck Silas with his fist. Silas went down again, and as he did so, his head struck against a machine, and as a result, he sustained head injuries which caused his death.

The evidence is silent as to whether or not Silas had a knife on his person with which to carry out his threat, but the witness, Petty, testified that he did not see a knife in Silas's hand when the threat was uttered. The evidence is undisputed that Silas and Petty had never previously had any trouble between them, nor was there any apparent animosity before the time that Petty dropped the sheet of paper on Silas.

The principal question presented is whether or not the death of Silas arose out of and in the course of his employment. (*Armour & Co.* v. *Industrial Com,* 397 Ill. 433; *Riley* v. *Industrial Com.* 394 Ill. 126; *Scholl* v. *Industrial Com.* 366 Ill. 588; *Vincennes Bridge Co.* v. *Industrial Com.* 351 Ill. 444.) We have repeatedly held that the employer is not an insurer of the safety of its employees at all times during the period of the employment. (*Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294; *Illinois Country Club, Inc.* v. *Industrial Com,* 387 Ill. 484; *Mt. Olive & Staunton Coal Co.* v. *Industrial Com.* 374 Ill. 461; *Boorde* v. *Industrial Com.* 310 Ill. 62.) There must be a causal connection between the conditions existing on the employer's premises and the injury of the employee, and the accident must have had its origin in some risk connected with, or incidental to, the employment. We said in *Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484, "An injury may be said to arise out of the employment when, upon consideration of all the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is required to be performed and the

resulting injury. The mere fact that an employee was present at the place of injury because of his employment will not suffice unless the injury itself is a result of some risk of the employment."

Counsel for defendant in error contends that the rule of law to apply in this case is the one adopted by this court in *Pekin Cooperage Co.* v. *Industrial Com.* 285 Ill. 31, as follows: "No fixed rule to determine what is a risk of employment has been established. Where men are working together at the same work disagreements may be expected to arise about the work, the manner of doing it, as to the use of tools, interference with one another, and many other details which may be trifling or important. Infirmity of temper, or worse, may be expected, and occasionally blows and fighting. Where the disagreement arises out of the employer's work in which the two men are engaged and as a result of it one injures the other, it may be inferred that the injury arose out of the employment."

We cannot agree that the facts in the instant case justify the application of that rule. At the time Petty dropped the paper on Silas, an incident might have occurred to which such rule would be applicable, but it did not. The men continued their work and completed their job. Petty went over to lean against a hand truck to cool off. From the time that he had replied, "We all got to learn," until Silas approached him at the hand truck some thirty minutes later, they had had nothing to say to each other. At the time the fatal injuries were inflicted, neither of the parties was engaged in the duties of his employment.

The injuries which caused Silas's death did not have their origin in any risk peculiar to the employment. Silas was not then and there serving his employer's interest, and, therefore, there was no causal relation between the character of the employment and the injury. The risk of injury to himself was created by him at the time that he sought out Petty in the vicinity of the hand truck.

Counsel for defendant in error cites with approval our analysis in the case of *Triangle Auto Painting and Trimming Co.* v. *Industrial Com.* 346 Ill. 609, in which we discussed numerous cases involving altercations between fellow employees wherein the aggressor was precluded from recovery under the Workmen's Compensation Act for injuries resulting from his own assaults. They contend that, inasmuch as Petty struck the first blow, he was the aggressor, and rely on the fundamental principles of common law as they apply in cases of assault and battery. These principles are set forth in 5 Corpus Juris 617, which states: "Mere words do not amount to an assault. In accordance with the general rule that the violence offered must be physical, it is held that mere words or threats, however provoking or insulting, do not constitute an assault without an actual offer of physical violence."

In the instant case, Silas sought Petty out some thirty minutes after he, Petty, dropped the paper on Silas, and in a vile and abusive manner threatened to cut his throat. His words were antagonistic, and were such as might cause an altercation, whether justified or not. By such action, he stepped outside of the scope of his employment, and by so doing he stepped outside the protection of the Workmen's Compensation Act. *Armour & Co.* v. *Industrial Com.* 397 Ill. 433; *Triangle Auto Painting and Trimming Co.* v. *Industrial Com.* 346 Ill. 609; *Franklin Coal and Coke Co.* v. *Industrial Com.* 322 Ill. 23.

We are of the opinion, therefore, that the deceased, Willie Silas, was the aggressor and that his quarrel with Petty was in no way connected with his employment, or in the manner of doing his work. The judgment of the circuit court of Cook County confirming the award was contrary to the manifest weight of the evidence, and it is reversed and the award set aside.

*Judgment reversed; award set aside.*