(No. 31615.—

HERMAN FISCHER, Defendant in Error, *vs.* THE INDUS-
TRIAL COMMISSION *et al.*—(MOTOR CARGO, INC., Plain-
tiff in Error.)

*Opinion filed January 18, 1951.*

THOMAS C. ANGERSTEIN, GEORGE W. ANGERSTEIN, THOMAS K. GIFFORD, and HASSEL B. SMITH, all of Chicago, for plaintiff in error.

THEODORE P. NEBEL, and OWENS, OWENS & RINN, both of Chicago, for defendant in error.

Mr. JUSTICE WILSON delivered the opinion of the court:

Herman Fischer, hereafter referred to as the claimant, filed an application for adjustment of claim with the Industrial Commission, alleging that he sustained an accidental injury to his left wrist arising out of, and in the course of, his employment by Motor Cargo, Inc. An arbitrator found the injury was compensable and awarded compensation for temporary total incapacity and a twenty-five per cent permanent loss of use of the left hand. Upon review, the Industrial Commission found that the injury did not arise out of, and in the course of, the employment and dismissed the application for adjustment of claim. Thereafter, the superior court of Cook County reversed the decision of the Industrial Commission and reinstated the award made by the arbitrator. We have allowed the employer's petition for writ of error for a further review of the record.

Claimant, a dock hand, was injured in a fight with Paul Kimmel, his foreman, at about two-thirty in the afternoon on September 13, 1947. Claimant had two drinks of whiskey with his lunch and, after checking the cargo in a loaded truck, was given a number of bills of lading and instructed to load an empty truck with two men who had been working with him. Raymond Cuttill and two other dock hands were loading another truck in the same vicinity, and the freight and parcels for the two trucks were mixed together on the loading dock.

Other events preceding the injury are disputed. According to claimant, instead of loading his own truck, he assisted Cuttill in loading the other truck upon the theory

that, once the freight for the other truck was removed, it would be easier to load his own truck. Claimant further testified that, while he was so engaged, Kimmel appeared and an argument ensued as to why he was not working on his own truck; that Kimmel used a swear word and grabbed the bills of lading from his hand; that he picked up some of the bills which had fallen to the floor and pushed them against Kimmel's chest but did not strike him; that, as he turned to leave, intending to quit work for the rest of the day, Kimmel punched him in the eye, knocking him over a low crate, and that he broke his wrist when he fell.

The testimony of Marshall Sigler, a dock hand who was working on the other side of the loading dock, differed only to the extent that he stated claimant and Kimmel had been arguing for some time prior to the fight and that claimant tapped Kimmel on the chest or arm three or four times just before claimant handed over the bills of lading and Kimmel struck him.

Kimmel testified that, about one-thirty in the afternoon, he noticed claimant was not working; that his truck was empty, and that, from time to time, he would stand on the blades of the two-wheel hand trucks used by Cuttill's men, sing, and, in general, obstruct and bother the dock hands trying to load the other truck. Although he asked claimant to work and repeated this request at intervals, claimant continued his horseplay, whereupon he asked for and received the bills of lading, told claimant to go home and come back the next work day, and started to load the truck assigned to claimant himself. About fifteen minutes later, claimant, who had not left the loading dock as instructed, approached him with threats, made fighting motions and finally struck him on the chest. He walked away and, upon his return a few minutes later and while he was bending over to load a piece of freight on a hand truck, claimant struck him twice in the chest. As he straightened up, he

hit claimant a single blow, knocking him over a crate resulting in the injury to him and the end of the fight. It is undisputed that Kimmel was wearing glasses and did not remove them when he hit claimant.

Cuttill, the only other occurrence witness to testify, corroborated Kimmel in all material respects, particularly as to the facts that claimant was not helping him and was loading his own truck only intermittently; that the fight occurred about fifteen minutes after Kimmel received the bills from claimant, and that claimant threatened Kimmel, took a fighting stance and hit Kimmel twice in the chest before Kimmel struck his one and only blow.

Although the facts are somewhat conflicting, the law is clear. An employer operating under the Workmen's Compensation Act is not an insurer of the safety of his employees at all times during the employment. (*Container Corp.* v. *Industrial Com.* 401 Ill. 129; *Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294.) Under our statute, an accidental injury, to be compensable, must arise out of, as well as in the course of, the employment. (*Armour & Co.* v. *Industrial Com.* 397 Ill. 433; *Math Igler's Casino, Inc.* v. *Industrial Com.* 394 Ill. 330.) In general, an injury may be said to arise out of the employment when, upon consideration of all the attendant circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work was performed and the injury. (*Jefferson Ice Co.* v. *Industrial Com.* 404 Ill. 290; *Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484.) In short, the injury must have its origin in some risk connected with or incidental to the employment. (*Container Corp.* v. *Industrial Com.* 401 Ill. 129; *Olson Drilling Co.* v. *Industrial Com.* 386 Ill. 402.) On the other hand, where there is no causal connection between the injury and the character or conditions of the employment, or the employee is injured as a result of his stepping outside the scope of the employment, the protection of the Workmen's

Compensation Act cannot be invoked. *Armour & Co.* v. *Industrial Com.* 397 Ill. 433; *Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484.

The application of the foregoing general principles to injuries arising out of fights between employees has been the subject of frequent pronouncements by this court. Where the fight is a purely personal matter not growing out of a quarrel over the manner of conducting the employer's business, the resulting injuries to the disputants cannot be said to have arisen out of the employment and neither the aggressor nor his victim is entitled to compensation. (*Math Igler's Casino, Inc.* v. *Industrial Com.* 394 Ill. 330; *Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294; *City of Chicago* v. *Industrial Com.* 292 Ill. 406; *Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459.) Likewise, it is equally well settled that an injury in a fight between two employees arising out of a quarrel concerning the employer's work in which they were engaged is, as to the employee not responsible for the assault, a risk incidental to the employment and therefore compensable, (*Scholl* v. *Industrial Com.* 366 Ill. 588; *Franklin Coal and Coke Co.* v. *Industrial Com.* 322 Ill. 23; *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Com.* 288 Ill. 126; *Pekin Cooperage Co.* v. *Industrial Com.* 285 Ill. 31,) but the injuries to the assailant, being traceable directly to his voluntary actions as aggressor, cannot be ascribed to the conditions of the employment or considered a risk incidental to the employment and, hence, are not compensable. *Armour & Co.* v. *Industrial Com.* 397 Ill. 433; *Triangle Auto Painting and Trimming Co.* v. *Industrial Com.* 346 Ill. 609.

Although the claimant and the employer in the case at bar disagree as to whether the injury sustained resulted from a fight growing out of an altercation concerning the employer's work, a concession that the fight arose out of a quarrel over the manner of conducting the employer's

business does not aid claimant. Regardless of the origin or cause of the fight, there is very substantial evidence that claimant was the aggressor and that he brought his injury upon himself by threatening Kimmel and striking him until Kimmel was goaded into striking back in self-defense. While the facts are disputed, upon the record made the Industrial Commission was entitled to find that the injury did not arise out of the employment and, plainly, it cannot be said that the finding is contrary to the manifest weight of the evidence. The question as to whether an injury arises out of, and in the course of, the employment is one of fact, (*Peters Machinery Co.* v. *Industrial Com.* 346 Ill. 403; *Landon* v. *Industrial Com.* 341 Ill. 51,) except, of course, where the evidence is uncontroverted. (*Math Igler's Casino, Inc.* v. *Industrial Com.* 394 Ill. 330; *Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484.) Findings of the Industrial Commission will not be set aside upon review unless contrary to the manifest weight of the evidence, and there must be something more than a mere conflict in the evidence to warrant the conclusion that a finding of fact is erroneous. (*Caterpillar Tractor Co.* v. *Industrial Com.* 397 Ill. 474; *Cinch Manufacturing Corp.* v. *Industrial Com.* 393 Ill. 131.) Even though the fight concerned the employer's work, claimant is not entitled to compensation for an injury sustained in the role of aggressor, as the risk of injury in a case of this character cannot be said to be incidental to the employment, but, rather, is traceable directly to the claimant's deliberate act of aggression. *Armour & Co.* v. *Industrial Com.* 397 Ill. 433; *Triangle Auto Painting and Trimming Co.* v. *Industrial Com.* 346 Ill. 609.

The judgment of the superior court of Cook County is reversed and the cause remanded, with directions to confirm the decision of the Industrial Commission.

*Reversed and remanded, with directions.*