ULPIANO CARDONA VELÁZQUEZ, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; STATE INSURANCE FUND, Insurer.

No. CI-63-13.    Decided April 10, 1964.

*Nicolás Delgado Figueroa, Sarah Torres Peralta,* and *Ginoris Vizcarra* for petitioner. *Donald R. Dexter, Carmen Ana Archeval,* and *Miguel A. Guzmán Soto* for State Insurance Fund.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

On April 30, 1961, the employer, Compañía Azucarera del Camuy, employed Ulpiano Cardona Velázquez, as a solderer, and Manuel Rodríguez, as control analyst, in its Central Río Llano.

On that date, during working hours and within the factory itself, those two employees engaged in a fight, assaulting and striking each other, and both were injured. The employer sent the State Insurance Fund a report concerning the injuries received by Ulpiano Cardona Velázquez only. In the investigation undertaken by said entity on June 21, 1962, sworn statements were obtained from workmen Leonides Vélez González and Víctor J. Rodríguez. The former testified before investigator Anselmo Irizarry, among other things, the following:

"That day I was in the laboratory; I saw when Lito (Manuel Rodríguez) and Ulpiano had a fight. Ulpiano assaulted and struck Lito; then Lito grabbed a glass tube and attacked Ulpiano and they kept on fighting."

Insofar as pertinent, the testimony of Víctor J. Rodríguez, as disclosed by the original record, reads:

"What do you know in connection with something that allegedly took place between Manuel Rodríguez and Ulpiano Cardona?

—They had a personal encounter, about union affairs; then, Ulpiano went to the laboratory and attacked Manuel Rodríguez. He had no business going into the laboratory because he is a solderer; Manuel Rodríguez, upon being attacked, repelled the assault, and he kept on striking him until we had to separate them; the fight was uneven, because Ulpiano was much bigger than Manuel; during the fight they were both cut with a glass tube.

What kind of a person is this Ulpiano Cardona?

—No workman wants him here, because he is not a good fellow employee.

Who started the aggression?

—I saw Ulpiano strike Manuel Rodríguez first with his fist and Rodríguez retaliated with a tube."

On August 21, 1962, the Manager of the State Insurance Fund held that the workman, Ulpiano Cardona Velázquez, "suffered no labor accident" and closed and dismissed the case. The workman appealed from this decision to the Industrial Commission of Puerto Rico.

On the following October 29 a public hearing of the case was held before Commissioner Manuel de Jesús Mangual. The workman was then asked whether he had witnesses and he answered: "They are the same witnesses as the State Fund's." Tr. 1. That is, the witnesses who had testified before investigator Irizarry.

The account given by the workman Ulpiano Cardona Velázquez at the aforesaid public hearing, concerning the quarrel in which he was injured, is the following:

"Yes, and I called his (Manuel Rodríguez') attention and I told him: 'Stop that, because that will result in ill feelings among fellow employees.' And he told me: 'I put it there and I will hit anyone who removes it with this tube.' He had a glass tube in his hand and he struck me." Tr. 4.

Manuel Rodríguez', the analyst, is as follows:

"He (Ulpiano Cardona) asked me who had authorized me to post certain caricatures in the Bulletin Board. Then, before I had answered and without finishing my sentence, he swung backwards and struck me with his fist.

". . . . . . . .

"He went to provoke me. He is an instrument of the Central and I, of the workmen. He is such an instrument of the Central that the Central fired me and they let him stay. They refused to give me the necessary blanks for treatment and I was told that it had been a fight and not a matter for the Fund. They would not sent me to the clinic for X-rays." Tr. 7.

It is an interesting fact with respect to the other witnesses with whom the Fund intended to establish that Ulpiano Cardona had started and provoked the fight and the one who had struck the first blow, that Leonides Vélez González, who, as we have previously seen, had testified under oath that Cardona "assaulted and struck Lito (Manuel Rodríguez), and then Lito grabbed a glass tube and attacked Ulpiano . . . ." fundamentally changed that statement at the hearing and testified there that it was Manuel Rodríguez who first struck Ulpiano "with a tube on the head." Tr. 9. Víctor J. Rodríguez, who also testified in the preliminary investigation, did not appear at the hearing, despite the fact that he was expected to appear, and finally, a witness, Alejandro Costa Zayas, testified: ". . . I did not see anything, I was not there." Tr. 11.

Those two contradictory, irreconcilable versions stood face to face with respect to the basic fact of who had struck the first blow.[1] A majority of the Commission

---

[1] Notwithstanding that § 6 of Act No. 45 of 1935 provides "that the records of the investigation of cases in accordance with this Act, now in the possession of the Manager of the State Fund, shall be admitted as evidence by the Industrial Commission," counsel for the Manager failed to introduce at the hearing the previous sworn statements of Leonides Vélez González and Víctor J. Rodríguez which were in the record. He did

gave full credit to Manuel Rodríguez' version. On November 5, 1962, the Industrial Commission, by a majority, entered an order dismissing the appeal taken by the workman and affirming the decision of the Manager refusing him the benefits provided by law. In said order there is a faithful and complete summary of all the testimonies given during the hearing and not even the slightest mention or reference is made therein as to the statements made during the preliminary investigation above-mentioned.

We consider that the following basic finding of the Commission is correct and supported by the evidence believed by a majority of its members:

"*All the evidence heard by us,* as well as the observations of the undersigned *as to petitioner's behavior and attitude* during the public hearing and also the physical aspect, led the trier's mind to the conviction that Ulpiano Cardona Velázquez was the aggressor in this case." (Italics ours.)

The distinguished President of the Commission dissented. In her dissenting vote she holds, among other things, that the workman should have received compensation and that "in the case under our consideration, even if the workman were deemed to have been the aggressor, nevertheless, the reason for the aggression arose in the course of said work and as a consequence thereof and as a function inherent therein."

The workman moved for reconsideration "on the grounds contained in the Dissenting Vote . . ." By a majority order, the Commission denied reconsideration on February 26, 1963, its President again dissenting.

In part, the majority order states:

"The cases cited in the dissenting vote are distinguishable from this case, because the facts on which our order is based

not even call Vélez' attention to his previous testimony essentially different from his testimony at the trial. It is hard for us to believe that he was unaware of the existence of those previous testimonies.

are different. Each case must be decided on the basis of its own merits. The fact that the participants in a fight are acquitted or found guilty is not an element to be taken into consideration for a case to be compensable under the current law governing this matter. The Commission did not decide this case on the basis of the criminal intent, but taking into consideration all the circumstances and, mainly, that the fight was begun and provoked by the allegedly injured man. Furthermore, in order that an accident be compensable, pursuant to Law, three requisites must be complied with, to wit, the injury must:

"(a) be the result of any act or function inherent in the work,

"(b) have happened in the course of the work, and

"(c) be a consequence of the work.

"Undoubtedly, modern courts usually hold that injuries arising out of fights at work, even for the aggressor, are compensable when the evidence shows that somehow the work provides the risk of being injured. (6 Schneider, Workmen's Compensation Law 188; 4 NACCA L. J. 47–54.)

"In this case the facts and our inferences from all the evidence led us to the conclusion that it is not compensable.

"From the way the workman testified we were able to notice that he is a person of an impulsive disposition, in addition to having a rugged physique.

".          .          .          .          .          .          .          .

"Our Workmen's Accident Compensation Act does not establish the defense of aggression and of no compensation for a fight. (*Newell* v. *Moreau*, 94 N.E. 439; 55 A.2d 476 (1947) and cases in note 101, post.) See note 97, *supra*; C.J.S. 762, note 53."

However, in said order denying reconsideration, for the first time in the appeal before the Industrial Commission, reference is made to the previous testimonies given during the preliminary investigation of the claim and the portion of Víctor J. Rodríguez Cintrón's testimony quoted by us nearly at the beginning of this opinion, is included therein, because "they reveal the reasons Ulpiano had to attack

Manuel," and moreover, "the workman's emotional predisposition to affect other persons."

In the interesting brief filed by the distinguished counsel for petitioner—the workman appeared on his own behalf before the Manager and the Commission—six errors are assigned. In the first assignment they claim that the workman's right to the due process of law was violated and he was refused the statutory right to reconsideration.

■ We concede that, not even for the purpose and in the manner it was done, the majority of the Commission was authorized to take into consideration, in disposing of the motion for reconsideration, the preliminary statements given during the investigatory stages of the claim, without such statements having been duly and previously separated, identified, offered, and admitted in evidence.

Section 6 of the above-mentioned Act No. 45 merely declares that those statements are admissible as evidence. But this does not mean that they may be considered as evidence if they have not been separated, identified, offered, and admitted as such.[2]

However, taking all the attendant circumstances into consideration, the error committed by the majority is not so serious as to constitute a reversible error. Manuel Rodríguez' testimony completely and clearly showed that Ulpiano was the initiator and first aggressor in the fight.

Both from the original order and from the order on the motion for reconsideration, it appears that the basic determination that Ulpiano was the initial aggressor rested on the evidence introduced at the public hearing. In the second order mention is needlessly made of the previous statements in order to direct attention to additional factors to "reveal

---

[2] *Alemañy* v. *Industrial Commission*, 63 P.R.R. 578 (1944), and *Cepeda* v. *Industrial Commission; Rivas, Int.*, 76 P.R.R. 750 (1954). See, also, *López* v. *Planning Board*, 80 P.R.R. 625, 648 (1958).

the reasons Ulpiano had to attack Manuel" and the latter's "emotional predisposition."

In the second assignment it is alleged that the Commission erred "in refusing compensation under the circumstances of this case, on the ground that petitioner had been the aggressor."

It is true that in several continental jurisdictions for an aggression to bar compensation or statutory benefits in the case of a workman who is the aggressor, it is indispensable that the latter's conduct be equivalent to "serious and wilful misconduct," and that the affair taken as a whole, does not have its origin in the nature and conditions of the employment, so that the employment does not bear to the injury the relation of cause to effect.[3]

Our Act is applicable, pursuant to § 2 thereof, to all such workmen and employees as suffer injuries or are disabled or lose their lives by reason of accidents caused by (1) any act or function inherent in their work, (2) that happen in the course of the latter, and (3) as a consequence thereof, and any reasonable doubt arising out of its application as to the existence of a causal relation between the work or occupation of the workman or employee and the injury, disability, or death, or the occupational nature of a disease, shall be resolved in favor of the workman or employee, or his beneficiaries.

Although at the time of the fight there was certain union trouble among the workmen or employees of the employer's sugar factory, under the circumstances of the case, we do not consider that the prevailing labor situation was the cause of the voluntary aggression that took place without previous provocation and abusiveness. Nor have we any doubt as to this.

---

[3] See *Dillon's Case*, 85 N.E.2d 69 (1949).

■ The aforesaid statute also provides, in its § 4, that an accident is not compensable if it occurs "when the workman or employee attempts to commit a crime or to injure his employer or any other person, or when he wilfully causes himself the injury." In *Rivera* v. *Industrial Commission*, 57 P.R.R. 640, 643 (1940), we adopted the views expressed by the Supreme Court of Illinois in *Triangle Auto Painting & T. Co.* v. *Industrial Comm'n*, 346 Ill. 609, 618, 178 N.E. 886, in the following terms:

"Injuries compensable are those arising out of the conditions under which the employee is required to work and may properly include injuries arising out of a fight in which the injured employee was not the aggressor, when the fight was about the employer's work in which the employees were then engaged, but it is not within the intent of the act that an employee be protected against the consequences of a fight in which he was the aggressor though the fight be over matters of his employer's work in which such employees are then engaged. The risk of injury in such a case can not be said to be incidental to the employment but rather the result of such employee's own rashness.

"While it is the purpose of this Court to give a liberal construction to the Workmen's Compensation Act, to the end that the employee may receive its full benefit, yet we are of the opinion that it would be going beyond the letter and spirit of the act to hold that an injury received by a deliberate aggressor in an assault either arises directly out of the employment or is an incident thereto. We are of the opinion, therefore, that defendant in error is not entitled to compensation and that the circuit court erred in so holding. The judgment of that court is reversed and the award set aside."

The third, fourth, and fifth assignments of error actually refer to the weighing and sufficiency of the evidence.

■ Section 11 of said Act grants review in these cases only "on questions of law, or upon appreciation of the evidence when such evidence is of an expert nature." We are thereby estopped from considering those three assignments

of error insofar as they imply questions of fact. We have already stated that the Commission had sufficient evidence to determine that Ulpiano was the provoker and initial aggressor in the fight.

The sixth error was not committed either. Although not in the best manner, the Commission made the indispensable basic findings of fact to decide the case.

The order appealed from will be affirmed.