(No. 96857.—

# SANDRA FRANKLIN, Appellee, v. THE INDUSTRIAL COMMISSION (Carson Pirie Scott & Company, Appellant).

*Opinion filed May 20, 2004.*

274

Thomas J. Fitzgibbons and Ellecia L. Parsell, of Inman & Fitzgibbons, Ltd., of Chicago, for appellant.

Richard J. Barr, Jr., of Lannon, Lannon & Barr, Ltd., of Chicago, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Claimant Sandra Franklin sought compensation under the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 2000)), for an injury to her left arm suffered at work during a physical altercation with coemployee Geniver Mohan on February 18, 2001. An arbitrator of the Industrial Commission of Illinois (the Commission) found that the injury did not arise out of claimant's employment and was therefore not compensable. Claimant appealed to the Commission. The Commission also found that the injury did not arise out of claimant's employment, on the ground that claimant was an aggressor in the fight that caused the injury. Claimant appealed to the circuit court of Cook County, which confirmed the decision of the Commission. However, the Industrial Commission Division of the appellate court reversed, holding that the Commission erred when it found that both claimant and Mohan were aggressors. 341 Ill. App. 3d 128. The appellate court remanded the cause to the Commission to find which employee was the aggressor. 341 Ill. App. 3d at 136. We granted employer Carson Pirie Scott & Company's petition for leave to appeal pursuant to Rule 315 (177 Ill. 2d R. 315). We now affirm the judgment of the appellate court.

## BACKGROUND

Claimant was a cosmetic artist and counter manager in employer's River Oaks store, in Calumet City. She was assigned primarily to sell Elizabeth Arden cosmetics. Her assigned work area was a rectangular counter, or "bay," with an opening at one end. Coemployee Mohan worked in a bay near claimant's, selling Fashion Fair cosmetics. On February 18, 2001, claimant's left arm was seriously injured during a fight between claimant and Mohan.

Claimant filed a petition for adjustment of claim, and her case was heard by an arbitrator. The arbitrator

denied compensation on the ground that the fight between claimant and Mohan was personal in nature or, alternatively, claimant was the aggressor. Claimant appealed to the Commission, which found that the fight was work related. However, the Commission denied compensation on the ground that claimant was an aggressor.

The evidence heard by the arbitrator and relied upon by the Commission was as follows. Both claimant and Mohan received part of their compensation in the form of commissions. According to employer's policy, cosmetics salespersons were to sell their assigned product lines only, except that if a customer first purchased a product from an employee's line, the employee could follow the customer to another counter and make further sales from other product lines to that customer. Also, employees were permitted to sell products from another employee's counter if the other employee was busy with other customers. Claimant testified that these rules applied to all cosmetics salespersons and that both she and Mohan were aware of the rules.

Claimant testified that she began having problems with Mohan in August of 2000 when Mohan made sales from claimant's counter in violation of the rules, and claimant complained to management. Her complaint resulted in a meeting between claimant, Mohan, and management. Claimant testified that after that meeting, she had four or five encounters with Mohan in which Mohan bumped claimant in a threatening way. Claimant testified she made written reports of three of these encounters.

On February 18, 2001, at about 4 p.m. there were three or four customers at claimant's counter. Claimant testified she told the customers that she would take care of each in turn, and the customers agreed to wait for her. Mohan approached one of the customers and asked to

help her. Claimant testified that the customer told Mohan that she was going to wait for claimant, and Mohan then became verbally abusive toward the customer. Claimant testified that she called for a manager. Manager Barbara Gerrard arrived and spoke to the customer. Meanwhile, Mohan was shouting threats at claimant and pointing her finger at claimant. Gerrard instructed Mohan to return to her bay. However, when Gerrard left, Mohan exited her bay and approached claimant's bay, shouting at claimant, pacing back and forth, and threatening claimant. Claimant felt frightened, began crying, and left the sales floor. She returned about 20 minutes later with aspirin and picked up a cup to get water.

Claimant testified that at this point Mohan again approached claimant's bay, shouting at her and threatening her. Claimant went to another bay, called security, and was told to remain at her bay and that security would direct a video camera at claimant's bay. Claimant testified that when she returned to her bay, Mohan was there, shouting and threatening. Claimant told Mohan to "do what you do best." Claimant testified that Mohan then approached with arms outstretched, grabbed claimant by the left arm and hair, and pulled claimant towards her. Claimant testified that she responded by striking Mohan twice "as hard as [she] could" on the head with the cup claimant was still holding in her right hand. Another employee separated the two women. Claimant's left arm, which had previously undergone surgery to treat cancer, was seriously injured.

The employer called Mohan as a witness but she refused to testify, citing her fifth amendment privilege against self-incrimination.

Courtney Harris sold Lancome cosmetics from the same bay as claimant. Harris testified that immediately before the fight Mohan approached their bay. Claimant told Mohan that she was not afraid of her. At the same

time Mohan was telling claimant that claimant could not order Mohan around. Mohan then moved around a display table to the opening of claimant's bay. Claimant did not advance toward Mohan, but turned to face her. Harris testified that she did not see the fight itself.

Barbara Gerrard, who was store manager on duty on the day of the fight, testified concerning events prior to the fight. Ellyn Edwards, loss prevention manager for the employer, testified concerning written reports that claimant filed regarding earlier confrontations with Mohan. The testimony of Gerrard and Edwards contradicted claimant's testimony about the events leading to the fight on a number of points. For example, while claimant testified that in November of 2000 she made a written report to a security agent named Haskell of an incident between her and Mohan, Edwards testified that no such report was filed and that Haskell did not work at the River Oaks store during November of 2000.

A videotape, recorded at the time of the fight by a store security camera, was entered into evidence. The Commission viewed the tape and found that it showed Mohan approaching claimant with her arms folded. It then showed claimant striking Mohan twice with the cup. The camera's view of claimant was partially obscured by a display rack. Claimant testified on rebuttal that the tape did not depict everything that happened during the fight. The Commission found that in the videotape it appears claimant struck the first blow.

Both the arbitrator and the Commission found claimant was not credible. The Commission cited a number of reasons, including conflicts within claimant's testimony, conflicts between claimant's testimony and other witnesses, and conflicts between claimant's testimony and the videotape. Finally, the Commission found parts of claimant's testimony were implausible, such as her claim that she was initially an innocent bystander in a dispute

between Mohan and a customer who preferred to wait to be served by claimant. The Commission relied on the testimony of Harris and on the videotape to find that claimant was an aggressor in the fight along with Mohan. On that basis the Commission denied compensation. The appellate court reversed and remanded, holding that the Commission erred when it denied compensation based on a finding that claimant was an aggressor, as opposed to finding that either claimant or Mohan was the aggressor. 341 Ill. App. 3d at 136. The employer has appealed from that judgment. Thus our review concerns whether the Commission erred in its application of the aggressor defense.

## ANALYSIS

When the Commission reviews an arbitrator's decision, it exercises original and not appellate jurisdiction, regardless of whether it hears additional evidence. *Paganelis v. Industrial Comm'n*, 132 Ill. 2d 468, 483 (1989). No reviewing court may overturn a decision of the Commission unless the decision is contrary to law or is based on factual determinations against the manifest weight of the evidence. *Fitts v. Industrial Comm'n*, 172 Ill. 2d 303, 307 (1996). Review of Commission decisions regarding questions of law is *de novo*. *Butler Manufacturing Co. v. Industrial Comm'n*, 85 Ill. 2d 213, 216 (1981).

An injury is compensable under the Act only if the claimant proves by a preponderance of the evidence that the injury both occurred in the course of and arose out of the employment. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203 (2003). An injury arises out of the employment if it results from a risk that originates in, or is incidental to, the employment. *Sisbro*, 207 Ill. 2d at 203. When a fight at work arises out of a purely personal dispute, resulting injuries do not arise out of the employment. *Castaneda v. Industrial Comm'n*, 97 Ill. 2d 338, 342 (1983). On the other hand, fights arising out of

disputes concerning the employer's work are risks incidental to the employment, and resulting injuries are compensable. *Fischer v. Industrial Comm'n*, 408 Ill. 115, 119 (1951). However, injuries to the aggressor in such a fight are not compensable. *Container Corp. of America v. Industrial Comm'n*, 401 Ill. 129, 133 (1948). We refer to the rule that an aggressor's injuries are not compensable as the "aggressor defense."

We first announced the aggressor defense in *Triangle Auto Painting & Trimming Co. v. Industrial Comm'n*, 346 Ill. 609 (1931). In *Triangle Auto Painting*, the claimant was injured in a fight at work over the use of a paint spray gun. After reviewing precedents holding that injuries in fights arising out of work-related disputes are injuries arising out of the employment, we held the aggressor's injuries in such a fight nevertheless do not arise out of the employment. *Triangle Auto Painting*, 346 Ill. at 618. We reasoned that the aggression negates all causal connection between the work and the injury, so that the work is neither "the proximate nor a contributing cause of the injury." *Triangle Auto Painting*, 346 Ill. at 617. Instead, the cause of the injury is the aggressor's "own rashness." *Triangle Auto Painting*, 346 Ill. at 618.

Subsequent opinions have applied the rule of *Triangle Auto Painting* without repeating its reasoning. See, *e.g.*, *Ford Motor Co. v. Industrial Comm'n*, 78 Ill. 2d 260 (1980). However, the aggressor defense continues to be based on the statutory requirement that injuries are not compensable unless they arise out of the employment. See 820 ILCS 305/2 (West 2000).

The appellate court suggested that it is time "to revisit the continuing vitality of the aggressor defense." 341 Ill. App. 3d at 135-36. As just noted, *Triangle Auto Painting* reasoned that aggressive acts by the claimant may break the causal connection between the employment and the injury. This is not the only area of workers'

compensation law where the claimant's acts may negate a causal connection between the employment and the injury. See, *e.g., Howell Tractor & Equipment Co. v. Industrial Comm'n,* 78 Ill. 2d 567, 574-75 (1980) (holding claimant's injuries not compensable because, while it was reasonable and foreseeable that a traveling employee would go to a bar with coworkers at 10 p.m., it was not reasonable or foreseeable for him to attempt to return to his motel by walking three miles at 2 a.m. through an unsavory section of an unfamiliar town). *Cf. Union Starch, Division of Miles Laboratories, Inc. v. Industrial Comm'n,* 56 Ill. 2d 272, 277-78 (1974) (holding that the Commission could find the injury compensable where it was not unreasonable or unexpected for employee to seek fresh air by stepping through window onto roof when going onto the roof for fresh air through other windows was a long-standing practice in which employer acquiesced). Thus, the aggressor defense is part of Illinois workers' compensation law because of the need to determine whether an act of fighting is causally connected to the employment.

The aggressor defense is not expressly provided in the Act. Rather, the aggressor defense is a rational construction of what the legislature intended when it required that compensable injuries must arise out of the employment. *Triangle Auto Painting,* 346 Ill. at 618 (concluding that "it is not within the intent of the act that an employee be protected against the consequences of a fight in which he was the aggressor"). Since *Triangle Auto Painting* announced the aggressor defense more than 70 years ago, the legislature has not abolished it, which it could have done at any time. We therefore presume that the legislature acquiesces in our construction of the legislative intent. *People v. Drakeford,* 139 Ill. 2d 206, 215 (1990), quoting *Miller v. Lockett,* 98 Ill. 2d 478, 483 (1983).

In sum, because the Act still requires a causal connection between the employment and the injury, the aggressor defense remains vital in Illinois.

As explained above, the aggressor defense applies only when the claimant's conduct negates the causal connection between the employment and the fight. The question of who made the first physical contact, while important to determining whether that has occurred, is not decisive. *Ford Motor Co.*, 78 Ill. 2d at 263. Rather, a claimant's conduct must be judged in light of the totality of the circumstances. *Ford Motor Co.*, 78 Ill. 2d at 263. The circumstances obviously include the conduct of the other participant or participants in the fight. See *Ford Motor Co.*, 78 Ill. 2d at 263. Thus, whether a claimant's conduct rises to the level that triggers the aggressor defense depends in large part on the degree to which the other participant in the dispute has provoked her. For example, to respond to a brief exchange of words over a minor workplace mishap by seeking out the other employee a half an hour later and angrily threatening to cut his throat triggers the defense. *Container Corp. of America*, 401 Ill. at 133. To respond to threatening and abusive behavior by reflexively pushing the other employee away does not trigger the defense. *Ford Motor Co.*, 78 Ill. 2d at 263-64. For a manager to attempt to evict a discharged employee who refuses to leave the premises by taking a guard's pistol and approaching the employee with the pistol drawn and leveled does trigger the defense. *Riley v. Industrial Comm'n*, 394 Ill. 126, 130 (1946).

Whether a claimant is an aggressor is a question of fact, and the Commission's finding must be upheld unless it is against the manifest weight of the evidence. *Ford Motor Co.*, 78 Ill. 2d at 264. Nevertheless, if the Commission relies on a legally erroneous premise to find a fact, the resulting decision is contrary to law and must

be reversed. See *Freeman United Coal Mining Co. v. Industrial Comm'n*, 188 Ill. 2d 243 (1999). In *Freeman United* the Commission found that the claimant failed to prove a causal connection between his injury and his employment because the claimant had not presented evidence of exposure to coal dust. We held that requiring the claimant to present evidence of exposure conflicted with the statutory presumption that coal miners are exposed to coal dust, and we concluded that therefore the Commission's decision was contrary to law. *Freeman United*, 188 Ill. 2d at 245-46.

In this case, the Commission reasoned that,

> "both [claimant's] and Mohan's continued course of aggressive conduct \*\*\* and their failure to withdraw from the conflict allowed for an escalation of said conflict that ultimately resulted in the acts of physical violence exhibited by both employees. [Claimant] and Mohan were in fact equal participants in the altercation marking them both as the aggressor. As such, the Commission finds [claimant] to be an aggressor in the altercation and therefore is not entitled to compensation under the Act." *Franklin v. Carson Pirie Scott*, Ill. Ind. Comm'n Rep. 2002IIC0166 (March 5, 2002).

The Commission applied a standard whereby aggressive conduct leading to a fight, combined with failure to avoid a fight by withdrawing from the dispute when possible, marks a claimant as an aggressor. Based on that standard the Commission found that both claimant and Mohan were aggressors and only on that basis concluded that claimant was an aggressor not entitled to compensation.

In reversing the Commission, the appellate court held that only one participant in a fight may be deemed an aggressor. 341 Ill. App. 3d at 136. In dissent, one justice of the appellate court suggested that the Commission's finding that Mohan was an aggressor is irrelevant, and the Commission must be affirmed so long as its conclusion that claimant was an aggressor is supported by the evidence. 341 Ill. App. 3d at 137 (McCullough, P.J., dis-

senting). The Commission was not required to decide whether Mohan was an aggressor. The Commission had to consider Mohan's conduct only as part of the circumstances against which it judged claimant's conduct. However, for the following reasons, the appellate court correctly reversed the Commission without deciding whether the Commission's finding was supported by the evidence.

The employer points out that we have never held that multiple aggressors are impossible as a matter of law. It is possible to imagine scenarios in which it would be appropriate to find multiple aggressors, particularly, as one of the two dissenting appellate court justices suggested, where more than two employees are involved. See 341 Ill. App. 3d at 137 (McCullough, P.J., dissenting). However, it is not merely an accident of grammar that prior cases have always spoken of *the* aggressor. A typical fight involving two employees has only one aggressor. When one employee escalates the dispute, he changes the circumstances and typically makes it reasonable for the other employee to respond in kind. This is not to condone answering violence with violence. It is to acknowledge that a claimant's conduct must be judged in light of the circumstances, and the circumstances include the conduct of others.

In this case, nothing in the record indicates anything other than a typical fight. Therefore the appellate court correctly held that the Commission erred when it denied compensation based on its finding that both claimant and Mohan were aggressors. The Commission must decide whether claimant was *the* aggressor.

The parties point out that in many cases it is difficult to identify the aggressor. However, even though it is often a difficult task, it is also a familiar one, both in law and in daily life. We do not agree with the employer that the difficulty of identifying the aggressor is a reason to

expand the aggressor defense to allow the Commission to find that both participants in a typical fight were aggressors.

When a decision of the Commission is set aside, but the facts found by the Commission are sufficient to determine the correct decision, a reviewing court may simply enter the correct decision. 820 ILCS 305/19(f)(2) (West 2000). See, *e.g.*, *Butler Manufacturing*, 85 Ill. 2d at 216. However, when it is not clear from the record what decision is required, the appropriate remedy is to remand to the Commission so that it may decide in the first instance. *Furlong Construction Co. v. Industrial Comm'n*, 71 Ill. 2d 464, 470 (1978). Original jurisdiction is vested in the Commission, even though it is reviewing the decision of an arbitrator without hearing additional evidence. *Paganelis*, 132 Ill. 2d at 483. In this case, it is not clear from the record whether, had it not erred, the Commission would have found that claimant was the aggressor. Therefore the appellate court correctly remanded the cause so the Commission could correctly apply the aggressor defense in the first instance.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the appellate court, which remanded the cause to the Commission for further proceedings.

*Affirmed.*