917 N.E.2d 579 (2009)
334 Ill.Dec. 753
BASSGAR, INC., d/b/a Grant's West Hardware, Plaintiff-Appellee,
v.
ILLINOIS WORKERS' COMPENSATION COMMISSION and Darius Wicks, Defendants-Appellants.
No. 3-08-0781WC.
Appellate Court of Illinois, Third District, Workers' Compensation Commission Division.
October 15, 2009.
*581 Dariusz Musial, Sachs, Earnest & Associates, Ltd., Chicago, IL, for Appellant.
Matthew J. Novak, Garofalo, Schreiber, Hart & Storm, Chartered, Chicago, IL, for Appellee.
Justice HUDSON delivered the opinion of the court:
Claimant, Darius Wicks, suffered an injury to his left arm at work on January 6, 2002, as a result of a physical altercation with his supervisor. Claimant was charged with and convicted of battery (720 ILCS 5/12-3(a)(2) (West 2002)) for his role in the incident. Subsequently, claimant sought compensation for his injury under the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2002)). The arbitrator concluded that the altercation was "related" to claimant's work. Nevertheless, the arbitrator denied recovery, finding that claimant's criminal conviction collaterally estopped him from asserting that his supervisor was the aggressor. Claimant appealed the matter to the Workers' Compensation Commission (Commission). The Commission rejected the arbitrator's finding that, because of his battery conviction, claimant was collaterally estopped from relitigating the identity of the aggressor. The Commission further determined that claimant was not the "initial aggressor" and awarded claimant medical expenses, temporary total disability (TTD) benefits, and permanent partial disability (PPD) benefits. On judicial review, the circuit court of Will County set aside the decision of the Commission. Claimant then appealed the matter to this court.

I. BACKGROUND
Respondent, Bassgar, Inc., d/b/a Grant's West Hardware, is an appliance retailer. Claimant worked for respondent as a delivery driver. On January 6, 2002, claimant's left arm was injured during an altercation between claimant and his supervisor. On January 31, 2002, claimant filed an application for adjustment of claim seeking benefits for his injury. At the hearing on his application, claimant testified that, prior to the injury at issue, *582 he had worked for respondent as a delivery driver for approximately 2½ years. Regarding the events leading to the altercation with his supervisor, claimant testified as follows.
On January 6, 2002, claimant arrived at respondent's warehouse, retrieved his clipboard and radio, and began calling the customers on his route for that day. Claimant noticed that all but one of his deliveries were in the same vicinity. According to claimant, the remaining stop was "two hours out of [his] way" and would "make [him] get back several hours later." Claimant approached his supervisor, Richard Armstrong, regarding the anomalous delivery. Armstrong told claimant to stop complaining and then swore at him. Claimant stated that he intended to complete the route, but indicated that the one delivery was "out of place." Armstrong replied that if claimant did not want to complete the route as assigned, he could go home. Claimant then told Armstrong that he would complete the entire route except for the aberrant delivery. Armstrong responded that if claimant did not want to complete his entire route, he would be fired and that he should turn in his equipment. Claimant retorted that Armstrong did not have the authority to discharge him and he "waved [Armstrong] off."
Claimant then turned to walk to his truck. However, out of the corner of his eye, claimant observed Armstrong "coming at [him] at full speed." Armstrong grabbed claimant from behind, and the two men fell onto a table. Claimant fell face forward with his left arm tucked between his body and the table. Armstrong was on top of claimant. After the fall, Armstrong jumped up and ran through a nearby doorway. When claimant got up, he noticed a sharp pain shoot down his arm. Claimant then removed his coverall and "fiddl[ed]" with his arm, but he was unable to move it.
Claimant followed Armstrong, who had gone into an adjacent room, and asked him why he had pushed him into the table. Armstrong responded by pushing claimant and hitting him once or twice, causing claimant to fall. At that point, another employee approached, informed the men that he had called the police, and urged them to stop fighting. When the police arrived, Armstrong told them that he and claimant had an altercation after claimant was fired. The police instructed claimant to leave the premises. Claimant estimated that the entire altercation lasted about five minutes. Claimant denied striking Armstrong during the altercation.
After claimant left respondent's premises, one of his coworkers took him to the hospital. Claimant was diagnosed with a mid-shaft fracture of the radius and a dislocation of the distal radial ulnar joint. The following day, claimant underwent an open reduction/internal fixation of the fracture with plates and screws. On February 20, 2002, claimant was allowed to return to work as long as he did not use his left arm. Claimant informed respondent that he had been released to restricted duty, but respondent told him that he had been terminated.
Claimant testified that Armstrong filed a police report in relation to the incident and he (claimant) was arrested a couple of weeks after the events in question. Claimant was later charged by information with one count of battery (720 ILCS 5/12-3(a)(2) (West 2002)) and the matter proceeded to a bench trial. Claimant represented himself at the trial and his testimony was the only evidence presented on his behalf. Ultimately, the circuit court of Will County convicted claimant of the charged offense. The proceedings resulting in claimant's conviction were not transcribed. *583 However, claimant offered the following explanation for the guilty verdict:
"The result of the trial they said that because I followed him after he tackled me, that on their part they said I was guilty for the battery because I followed him after he tackled me, for that part."
Claimant stated that Armstrong was never convicted of any offense related to the altercation because claimant opted not to file charges against him.
Daniel Cooley testified that he was also employed by respondent as a delivery driver on January 6, 2002. Cooley's testimony closely mirrored that of claimant. Cooley testified that, following the altercation, he heard claimant complain that his arm hurt and he took him to the hospital. Cooley stated that he never observed either of the men exchange punches, although there were a "few seconds" when both men were out of his view. Cooley stated that he has observed Armstrong become upset at other employees, but he had never seen Armstrong push or strike anyone prior to the events in question. Cooley indicated that he has remained friends with claimant and that he no longer works for respondent because he had "too many injuries."
Kevin Arnold testified that he has worked for respondent for 10 years and continued to do so at the time of the arbitration hearing. Arnold was present when the altercation between claimant and Armstrong occurred. According to Arnold, on the day in question, claimant was not happy with the route to which he was assigned. Claimant also expressed to Armstrong his opinion that he was not being treated well. Armstrong told claimant to complete his route or go home. The next thing Arnold knew, the two men had fallen onto a table. Armstrong got up and walked away, but claimant followed him. According to Arnold, "a lot of yelling, some falling down, wrestling, and some punches" followed. Arnold observed claimant throw "many" punches at Armstrong, a few of which missed, causing claimant himself to fall. In contrast, Arnold stated that Armstrong punched claimant only in self-defense. Arnold instructed a fellow employee to call the police. Arnold estimated that the altercation lasted no more than five to ten minutes. Arnold added that it was not unusual for claimant to have a bad attitude or to complain about his route.
The arbitrator determined that the altercation between claimant and respondent was "related" to work. However, the arbitrator noted that in order to recover for an injury sustained during a workplace altercation, claimant was also required to establish that he was not the aggressor. The arbitrator found that claimant was "collaterally estopped on the issue of whether Armstrong is at fault regarding the altercation because that issue has been already determined by the criminal courts using a higher standard of proof" when claimant was convicted of battery. Having found that claimant was the aggressor, the arbitrator determined that claimant failed to sustain his burden of establishing that his injury arose out of and in the course of his employment.
The Commission found that collateral estoppel did not apply because the issue in the criminal proceeding was not identical to the issue in the workers' compensation proceeding. According to the Commission, a determination of the identity of the "initial aggressor" was neither necessary nor essential to the judgment in the criminal trial. Rather, the issue in the criminal case was whether claimant caused bodily harm to Armstrong or made physical contact of an insulting or provoking nature with Armstrong. See 720 ILCS 5/12-3(a) (West 2002). In contrast, the issue in the workers' compensation case was whether claimant was the "initial aggressor" and whether his injury resulted from that aggression. *584 The Commission further determined that petitioner was not the initial aggressor. As such, the Commission awarded claimant $13,003.86 as reasonable and necessary medical expenses (see 820 ILCS 305/8(a) (West 2002)), $333.33 per week for a period of 27-3/7 weeks as TTD benefits (see 820 ILCS 305/8(b) (West 2002)), and $300 per week for 58-3/4 weeks as PPD benefits, representing 25% loss of use of the left arm (see 820 ILCS 305/8(e) (West 2002)).
On judicial review, the circuit court of Will County set aside the decision of the Commission. The trial court rejected the Commission's finding that the court in the underlying criminal proceeding did not have to determine the identity of the initial aggressor:
"[T]he Court in the underlying action would have been required to ascertain whether [claimant] had any legal justification to avoid a battery conviction. The Court found [claimant] guilty of battery. Further, it is clear that [claimant] had an incentive to fully participate. [Claimant] did not plead to the charge, but rather proceeded to a bench trial while represented by counsel [sic]. No evidence or argument has been presented to indicate that [claimant] did not fully participate in the criminal case.
The issue decided in the criminal case is identical with the issue decided here. Further, the Court in the criminal case made a final judgment on the merits in the prior case by finding [claimant] guilty after a bench trial. All three elements required to apply collateral estoppel are met in this case, and therefore, [claimant] is barred from relitigating the issue of who was the aggressor in the workers' compensation case."
This appeal ensued.

II. ANALYSIS
An injury is compensable under the Act only if the claimant proves by a preponderance of the evidence that his injury arose out of and in the course of his employment. Sisbro, Inc. v. Industrial Comm'n, 207 Ill.2d 193, 203, 278 Ill.Dec. 70, 797 N.E.2d 665 (2003). An injury is said to "arise out of" one's employment if the injury had its origin in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the injury. Sisbro, Inc., 207 Ill.2d at 203, 278 Ill.Dec. 70, 797 N.E.2d 665. Thus, where a physical confrontation occurring at one's place of employment involves a personal dispute unrelated to work, any injury which results is not considered to have arisen out of the employment. Castaneda v. Industrial Comm'n, 97 Ill.2d 338, 342, 73 Ill.Dec. 535, 454 N.E.2d 632 (1983). Conversely, an injury resulting from a fight between two employees involving a work-related issue is considered a risk incidental to the employment and is therefore compensable. Fischer v. Industrial Comm'n, 408 Ill. 115, 119, 96 N.E.2d 478 (1951). However, the principle known as the "aggressor defense" provides that even if a fight is work related, an injury to the aggressor is not compensable. Franklin v. Industrial Comm'n, 211 Ill.2d 272, 279-80, 285 Ill. Dec. 197, 811 N.E.2d 684 (2004). The rationale for the "aggressor defense" is that the claimant's "`own rashness'" negates the causal connection between the employment and the injury so that the work is neither the proximate nor a contributing cause of the injury. Franklin, 211 Ill.2d at 280, 285 Ill.Dec. 197, 811 N.E.2d 684, quoting Triangle Auto Painting & Trimming Co. v. Industrial Comm'n, 346 Ill. 609, 618, 178 N.E. 886 (1931).
Identifying the aggressor in a workplace altercation is a question of fact *585 for the Commission. Franklin, 211 Ill.2d at 282, 285 Ill.Dec. 197, 811 N.E.2d 684. In making this determination, the fact that one party made the first contact is not decisive. Ford Motor Co. v. Industrial Comm'n, 78 Ill.2d 260, 263, 35 Ill.Dec. 752, 399 N.E.2d 1280 (1980). Instead, the parties' conduct must be examined in light of the totality of the circumstances. Ford Motor Co., 78 Ill.2d at 263, 35 Ill.Dec. 752, 399 N.E.2d 1280. These circumstances include the conduct of the other participant or participants in the altercation. Franklin, 211 Ill.2d at 282, 285 Ill.Dec. 197, 811 N.E.2d 684. We are also mindful that an act of aggression may not be limited to merely physical conduct. As a question of fact, the Commission's finding regarding the identity of the aggressor will not be overturned on appeal unless it is against the manifest weight of the evidence. Franklin, 211 Ill.2d at 282, 285 Ill.Dec. 197, 811 N.E.2d 684. A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. City of Chicago v. Workers' Compensation Comm'n, 373 Ill.App.3d 1080, 1093, 313 Ill.Dec. 38, 871 N.E.2d 765 (2007). In this case, a review of the totality of the circumstances supports the Commission's determination that claimant was not the "initial aggressor."
The evidence presented at the arbitration hearing establishes that although the "altercation" between claimant and Armstrong lasted no more than five or ten minutes, there were actually two separate acts of aggression. The first act of aggression began as a verbal dispute regarding the delivery route claimant was assigned on the date in question. Following an exchange of words, claimant "waved [Armstrong] off" and attempted to walk away. However, Armstrong responded by tackling claimant and forcing him against a table. As a result of Armstrong's actions, claimant's left arm became wedged between the table and his body, and he sustained a complex fracture to the limb. Armstrong eventually released claimant and walked into an adjacent room. Armstrong's decision to retreat from the physical contact and enter the adjacent room suggests that he intended to withdraw from the fight, and, consequently, that any danger to claimant had passed. Yet rather than leave Armstrong alone, claimant decided to follow him around and repeatedly ask why Armstrong had thrown him against the table. According to claimant, Armstrong responded by pushing him and hitting him once or twice. However, another witness suggested that claimant threw several punches at Armstrong and that Armstrong only reacted in self defense. In other words, a second act of aggression began when claimant began to pursue Armstrong after the latter had retreated. See People v. Armstrong, 273 Ill.App.3d 531, 534, 210 Ill.Dec. 430, 653 N.E.2d 17 (1995) (stating that where the initial aggressor completely withdraws from an altercation, the victim's subsequent actions constitute a separate aggression); People v. Lockhart, 201 Ill.App.3d 700, 714, 146 Ill.Dec. 1011, 558 N.E.2d 1345 (1990) (noting that although the victim initiated physical contact with the defendant, the defendant became the aggressor when he attacked the victim after the victim retreated); People v. Shappert, 34 Ill.App.3d 683, 688, 340 N.E.2d 282 (1975) (finding that the right to defend oneself does not permit the pursuit and injuring of an aggressor after the aggressor has abandoned the quarrel).
It was the first act of aggression that persuaded the Commission to conclude that claimant was not the initial aggressor. The evidence set forth above supports the Commission's finding. In particular, the evidence establishes that although claimant instigated the verbal dispute, he attempted *586 to walk away. Prior to walking away, claimant made a nonthreatening gesture towards Armstrong. Armstrong responded by taking hold of claimant and throwing him against a table. Based on this evidence, we cannot say that a conclusion opposite to the one reached by the Commission is clearly apparent. Therefore, the decision of the Commission is not against the manifest weight of the evidence.
In so concluding, we reject the findings of the arbitrator and the trial court that, by virtue of claimant's conviction of battery, he is collaterally estopped from asserting that Armstrong was the aggressor. "Collateral estoppel is an equitable doctrine, the application of which precludes a party from relitigating an issue decided in a prior proceeding." American Family Mutual Insurance Co. v. Savickas, 193 Ill.2d 378, 387, 250 Ill.Dec. 682, 739 N.E.2d 445 (2000). Before collateral estoppel may be applied, three threshold requirements must be established. Savickas, 193 Ill.2d at 387, 250 Ill.Dec. 682, 739 N.E.2d 445. First, the issue decided in the prior adjudication must be identical with the issue presented in the suit in question. Second, there must have been a final judgment on the merits in the prior adjudication. Third, the party against whom estoppel is asserted must have been a party or in privity with a party to the prior adjudication. Savickas, 193 Ill.2d at 387, 250 Ill.Dec. 682, 739 N.E.2d 445. In this case, the first element is lacking. The Commission determined that the injuries for which claimant seeks compensation arose out of the first act of aggression. However, claimant's battery conviction did not relate to the first act of aggression. Rather, according to the testimony presented to the arbitrator, the battery conviction related to the second act of aggression. In particular, claimant testified that he was found guilty at the criminal trial because he followed Armstrong after Armstrong tackled him. There is no evidence that the court hearing the criminal charges considered claimant's role in the first act of aggression. In contrast, the Commission clearly did. It found that claimant was not the "initial aggressor" with respect to the first act of aggression. And, as we concluded above, the Commission's finding regarding the identity of the aggressor is not against the manifest weight of the evidence. Therefore, the issue decided in the criminal prosecution was not identical to the issue presented in the workers' compensation suit, and collateral estoppel does not apply.

III. CONCLUSION
For the reasons set forth above, we reverse the judgment of the circuit court of Will County and reinstate the decision of the Commission.
Circuit court judgment reversed; Commission decision reinstated.
McCULLOUGH, P.J., and HOFFMAN, HOLDRIDGE, and DONOVAN, JJ., concur.